# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## No. 21-10913-J

_____

## UNITED STATES OF AMERICA,

### Appellee,

### v.

## ROBERTO ARROYO-GARCIA,

### Appellant.

_____

## A DIRECT APPEAL OF A CRIMINAL CASE
## FROM THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

_____

## BRIEF OF APPELLANT

**Mark R. Jeffrey**
**State of Georgia Bar No.: 390048**
**Attorney for Defendant/Appellant**

Mark R. Jeffrey
2470 Windy Hill Road
Suite 300
Marietta, GA 30060
770-933-5377
Mark@jeffrey-law.com

No. 21-10913-J
*United States of America v. Roberto Arroyo-Garcia*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), the following people and entities have an interest in the outcome of this appeal:

Alterman, Cathy M.  Brito-Maldonado's Defense Counsel

Arroyo-Garcia, Roberto, Appellant

Bradford, Garrett L., Assistant United States Attorney

Brito-Arroyo, Zury, Co-Defendant

Brito-Maldonado, Bonifacio, Co-Defendant

Christian, Ryan M., Assistant United States Attorney

Cognac, Paul M., Brito-Maldonado's Former Defense Counsel

Erskine, Kurt, Acting United States Attorney

Fleming, Judy A., Brito-Arroyo's Former Defense Counsel

Friedman, Michael R., Brito-Arroyo's Former Defense Counsel

Haynes, Susan R., Superior Court Judge Palmer's Counsel

Horn, John A., Former United States Attorney

Jeffrey, Mark R., Appellant Attorney

Kearns, Stephanie A., Executive Director, Federal Defender Program

Lovell, John R., Brito-Arroyo's Defense Counsel

McBath, J. Elizabeth, Assistant United States Attorney

Pak, Byung J., United States Attorney

Palmer, Hon. Emory, Coweta County Superior Court Judge

Thrash, Jr., Hon. Thomas W., United States District Judge

Traynor, William G., Assistant United States Attorney

United States of America, Appellee

Vineyard, Hon. Russell G., United States Magistrate Judge

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Rule 34(a)(2)(C) of the Federal Rules of Appellate Procedure, the Defendant-Appellant suggests oral argument is not necessary because the facts and legal arguments are likely to be adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS** ................................... C1-2

**STATEMENT REGARDING ORAL ARGUMENT** ............................... i

**TABLE OF CONTENTS** ................................................................ ii

**TABLE OF CITATIONS** ............................................................... iv

**STATEMENT OF JURISDICTION** ................................................ vi

**STATEMENT OF THE ISSUES** ..................................................... 1

**STATEMENT OF THE CASE** ........................................................ 2

**COURSE OF PROCEEDINGS** ...................................................... 2

**RECITATION OF FACTS** ............................................................. 4

**Circumstances of Arroyo-Garcia's Arrest and His Relationship
with Co-Defendants** ..................................................................... 4

**Drug Quantity -- Court Attributed Drugs Found in Brito-
Maldonado's Bedroom to Arroyo-Garcia** ...................................... 7

**Gun Enhancement -- Co-Conspirator Possession Attributed** ................. 8

**Minor Role Request Denied** ........................................................ 9

**Court Assesses Three Criminal History Points on Dekalb County
Revocation** ................................................................................ 10

**Guideline Calculations and Pronouncement of Sentence** ...................... 13

**STANDARD OF REVIEW** ........................................................... 16

**SUMMARY OF THE ARGUMENT** .............................................. 17

**ARGUMENT AND CITATION OF AUTHORITY** ........................... 19

**I.    THE DISTRICT COURT ERRED IN GRANTING THE
        GOVERNMENT'S REQUEST FOR THE TWO POINT
        FIREARM ENHANCEMENT, WITHOUT MAKING ANY**

**FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE, WHILE PLACING ON ARROYO-GARCIA THE BURDEN OF SHOWING CLEAR IMPROBABILITY** ........................................................................ 19

**II.    THE DISTRICT COURT ERRED IN DENYING ARROYO-GARCIA A MINOR ROLE REDUCTION WITHOUT MAKING ANY FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE** ...................... 26

**III.   THE DISTRICT COURT ERRED IN CALCULATING A THREE POINT ENHANCEMENT TO ARROYO-GARCIA'S CRIMINAL HISTORY BASED ON A PROBATION REVOCATION PREDICATED ON A TOLLING ORDER ERRONEOUSLY ISSUED WHEN ARROYO-GARCIA WAS IN CUSTODY FOR IMMINENT DEPORTATION** ......................................................... 29

**IV.   THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING ARROYO-GARCIA IN ITS FAILING TO CONSIDER THE SCOPE OF ARROYO-GARCIA'S INVOLVEMENT IN THE CONSPIRACY AND THE PROPORTIONALITY OF HIS SENTENCE TO HIS TWO CO-DEFENDANTS** ....................................................................... 33

**CONCLUSION** ....................................................................................... 36

**CERTIFICATE OF COMPLIANCE** ....................................................... 37

**CERTIFICATE OF SERVICE** ................................................................ 38

## TABLE OF CITATIONS

**Cases**

Burgett v. Texas, 389 U.S. 109, 114 (1967) .................................................. 30

Stinson v. United States, 508 U.S. 36 (1993) .......................................... 20,21

Strachan v. Army Clemency and Parole Board, 151 F.3d 1308 (10th Cir.
    1998) ...................................................................................... 30, 32

United States v. Anaya-Plascencia, No. 18-11878 (11th Cir. 2018) ............. 31

United States v. Block, 705 F.3d 755 (7th Cir 2013) ............................... 24,25

United States v. Brown, 526 F.3d 691, 713 (11th Cir. 2008) ....................... 34

United States v. Chisholm, 73 F.3d 304 (11th Cir. 1996) ............................. 21

United States v. Cooper, 111 F.3d 845, 846-47 (11th Cir. 1997) ............. 22,23

United States v. Cooper, 203 F.3d 1279, 1287 (11th Cir. 2000) .............. 31,32

United States v. Delgado, 56 F.3d 1357 (11th Cir. 1995) ............................ 16

United States v. Gallo, 195 F.3d 1278 (11th Cir 1999) ....................... 20,21,25

United States v. House, 70 F.3d 87 (11th Cir. 1995) .................................... 16

United States v. Hunter, 323 F.3d 1314, 1320 (11th Cir. 2003) ................... 21

United States v. Irey, 612 F.3d 1160, 1165 (11th Cir. 2010) ....................... 17

United States v. Jackson, 57 F.3d 1012 (11th Cir. 1995) ............................. 31

United States v. Kinard, 472 F.3d 1294, 1297 n. 3 (11th Cir. 2006) ............ 16

United States v. Miranda; 505 F.3d 785, 792-96 (7th Cir. 2007) ................. 34

United States v. Mondo, 852 F. 3d 1343, 1350 (11th Cir. 2017) ............ 30,31

United States v. Montano-Garcia, No. 18-11773 (11th Cir. 2019) .............. 21

United States v. Olano, 507 U.S. 725 (1993) .............................................. 32

United States v. Overstreet, 713 F.3d 627 (11th Cir. 2013) ......................... 17

United States v. Perez-Alonso, No. 15-14894 (11th Cir. 2017) ................... 18

United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) ..................... 16

United States v. Presendieu, 880 F.3d 1228, 1245 (11th Cir 2018)
    .................................................................................. 17,21,24,27,28

United States v. Ramirez, 783 F.3d 687 (7th Cir 2015) ............................... 25

United States v. Roman, 989 F.2d 1117 (11th Cir 1993) .......... 18,29,30,31,32

United States v. Smith, 127 F.3d 1338 (11th Cir. 1997) .............................. 20

United States v. Spell, 44 F.3d 937 (11th Cir 1995) .................................... 30

United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir 2006)... 18,20,22,24

United States v. Vold, 66 F.3d 915, 920-21 (7th Cir 1995) .......................... 25

United States v. Walker, No. 18-11404 (11th Cir. 2019)……………….. 24

United States v. Wenxia Man, 891 F.3d 1253, 1274 (11th Cir 2018) ...... 26,28

iv

## **Guidelines**

U.S.S.G. § 1B1.3................................................................ 17,20
U.S.S.G. § 1B1.3(a)(1)(B) .......................................... 24
U.S.S.G. § 1B1.3 cmt. n 3 ........................................... 20
U.S.S.G. § 2D1.1(b)(1) ................................................. 25
U.S.S.G. § 3B1.2 cmt. n(3)(C)................................. 26,28
U.S.S.G. § 4A1.2(e) ....................................................... 31

## **Statutes**

18 U.S.C. § 2 ..................................................................... 2
18 U.S.C. § 3553(a) ............................................... 15,17,33
21 U.S.C. § 860 ................................................................. 2
21 U.S.C. § 860(a) ........................................................... 3
21 U.S.C. § 841(b)(1)(A) ............................................... 2
21 U.S.C. § 846 ................................................................. 2
21 U.S.C. § 856 ................................................................. 2

## **Georgia Statutes**

O.C.G.A. § 17-12-23(a)(2) ......................................... 31

## **STATEMENT OF JURISDICTION**

The Eleventh Circuit Court of Appeals has jurisdiction to consider this case pursuant to 28 U.S.C. § 1291 and Rule 4, F.R.A.P.  This case involves a direct appeal of a criminal conviction and sentence imposed in the United States District Court for the Northern District of Georgia, Atlanta Division.

## **STATEMENT OF THE ISSUES**

I.     **WHETHER THE DISTRICT COURT ERRED IN GRANTING THE GOVERNMENT'S REQUEST FOR THE TWO POINT FIREARM ENHANCEMENT, WITHOUT MAKING ANY FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE, WHILE PLACING ON ARROYO-GARCIA THE BURDEN OF SHOWING CLEAR IMPROBABILITY;**

II.     **WHETHER THE DISTRICT COURT ERRED IN DENYING ARROYO-GARCIA A MINOR ROLE REDUCTION WITHOUT MAKING ANY FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE;**

III.     **WHETHER THE DISTRICT COURT ERRED IN CALCULATING A THREE POINT ENHANCEMENT TO ARROYO-GARCIA'S CRIMINAL HISTORY BASED ON A PROBATION REVOCATION PREDICATED ON A TOLLING ORDER ERRONEOUSLY ISSUED WHEN ARROYO-GARCIA WAS IN CUSTODY FOR IMMINENT DEPORTATION; AND,**

IV.     **WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING ARROYO-GARCIA IN FAILING TO CONSIDER THE SCOPE OF ARROYO-GARCIA'S INVOLVEMENT IN THE CONSPIRACY, AND THE PROPORTIONALITY OF HIS SENTENCE TO HIS TWO CO-DEFENDANTS.**

# STATEMENT OF THE CASE[1]

## COURSE OF PROCEEDINGS

Roberto Arroyo-Garcia ("Arroyo-Garcia") and his two co-defendants Bonifacio Brito-Maldonado ("Brito-Maldonado") and Zury Brito-Arroyo ("Brito-Arroyo") were named in a magistrate complaint on August 29, 2017.  [Complaint, Doc. 1].  On September 26, 2017, Arroyo-Garcia was indicted on the following Counts:  Count One – conspiracy to manufacture and distribute 500 grams of more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; Count Two – aiding and abetting the manufacture and possession with intent to manufacture, and possession with intent to manufacture and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine within 1,000 feet of a public elementary school, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 18 U.S.C. § 2; Count Three – using and maintaining a place for the purpose of manufacturing and possessing with intent to manufacture and distribute a mixture and substance containing a detectable amount of methamphetamine within 1,000 feet of a public elementary school in violation of 21 U.S.C. §§ 856 and 860; Count Four–

---

[1] References to the District Court record are noted as "(Doc--, p.    --)" with reference to the document number followed by reference to the applicable page number(s) within the listed document.   References to the sentencing transcript are referred to as "(ST-)", followed by designation to the applicable page number(s) of the transcript.

possession with intent to manufacture and distribute 500 grams of more of a mixture and substance containing a detectable amount of methamphetamine on a premises in which an individual under the age of eighteen is present and resides in violation of 21 U.S.C. § 860(a) [see Doc. 27]; Arroyo-Garcia was also charged under Count 7 for illegal reentry following deportation, which Count was later dismissed in June 2019 by the District Court [Doc. 177] upon Arroyo-Garcia's Objection [Doc. 145] to the Report and Recommendation [Doc 141].

On October 23, 2019, Arroyo-Garcia entered a plea of guilty to Counts One, Two and Four of the indictment [Doc 189]. There was no plea agreement, and the Government unilaterally dismissed Count Three. Each of the other defendants pled guilty to Count Three, as well as the counts Arroyo-Garcia pled to. On March 15, 2021, the District Court sentenced Arroyo-Garcia to a term of 252 months on Counts One and Two, to run concurrently, and 12 months on Count Four to run consecutive to Count One and Two for a total term of 264 months; to be followed by ten (10) years supervised release on Counts One and Two, and three years supervised release on Count Four [Judgment and Commitment, Doc. 251]. Arroyo-Garcia is currently incarcerated pending facility designation at the United States Penitentiary in Atlanta, Georgia.

A timely Notice of Appeal [Doc 253] was filed, and this Appeal follows.

3

## RECITATION OF FACTS

**Arroyo-Garcia Background.**  Arroyo-Garcia hails from Guerrero, Mexico, a region long noted for rampant poverty and crime, and its no-travel advisory from the U.S. State Department.  His parents left him illegally for the United States when he was a young boy and he lived with his grandmother (PSR, ¶ 60).  He has only a third-grade education, as he left school early in life to go to work at the direction of his relatives (PSR, ¶ 67).

Arroyo-Garcia had a prior 2014 conviction for illegal reentry following deportation (PSR, ¶ 48), and had been back in the United States without authorization for approximately eight (8) months prior to his arrest on the instant offense in August 2017 (PSR, ¶ 61).  The Government presented no evidence as to how long, or in what manner, Arroyo-Garcia had been associated with his co-defendants before being arrested.

## Circumstances of Arroyo-Garcia's Arrest and His Relationship with Co-Defendants

The link ultimately leading to Arroyo-Garcia's apprehension stemmed from an investigation of his co-defendant Brito-Arroyo, who was momentarily located at Brito-Arroyo's mothers' residence at 1319 Zachary Way, Norcross, Georgia pursuant to a tracking device that had been placed on Brito-Arroyo's vehicle (PSR, ¶ 15).  On August 28, 2017 the government agents began surveillance on the Zachary Way property.  Brito-Arroyo briefly stopped by the residence and was

apprehended by the authorities on his way back to his own residence in Sandy Springs, Georgia (PSR, ¶ 19). Following a consent search, the authorities located $10,000.00 in bundled currency, and a Taurus 9mm pistol in the center console of Brito-Arroyo's vehicle. Brito-Arroyo admitted ownership of the pistol and the money. (PSR, ¶ 18).

While Brito-Arroyo's mother lived at the Zachary Way residence, Brito-Arroyo and Brito-Maldonado were the actual leaseholders of the Zachary Way residence. See Report and Recommendation Denying Motions [Doc.141, p. 65]. As co-lease holder, Brito-Arroyo had an App on his cellphone that allowed him to monitor video feed from the security cameras mounted to the Zachary Way house (PSR, ¶ 25).

Arroyo-Garcia had no possessory interest in the Zachary Way residence, and it is undisputed that he did not live there (PSR, ¶ 23, ST- 25). While Arroyo-Garcia ultimately pled guilty to three of the four remaining counts following the dismissal of count seven, the Government unilaterally dismissed Count Three that had asserted that Arroyo-Garcia had maintained a place with the others for the purpose of manufacturing and distributing methamphetamine. Brito-Arroyo and Brito-Maldonado, again the actual leaseholders, each pled guilty to that count.

In the meantime, while Brito-Arroyo was being apprehended, other government agents remaining at the Zachary Street residence and following a

purported consent search involving Brito-Arroyo's mother, discovered Arroyo-Garcia and Brito-Maldonado inside a shed about 55 feet away from the residence itself. (PSR, ¶ 21; ST- 37). Large quantities of methamphetamine were found within the shed. Arroyo-Garcia tried to flee and was shortly thereafter apprehended. (PSR, ¶22). He reportedly had approximately $6,400.00 on his person (PSR, ¶21).

Shortly thereafter, agents obtained a consent to search form from Brito-Maldonado, and discovered a 9MM Beretta pistol, $8,500.00 in cash, and approximately 300 grams of methamphetamine in Brito-Maldonado's bedroom within the Zachary Way premises. (PSR, ¶24).

As for Brito-Arroyo, the agents obtained consent to search his physical residence in Sandy Springs, and found cash totaling $41,100.00, a Beretta 9mm pistol on the nightstand, along with ammunition and material for manufacturing methamphetamine. This was in addition to the gun and money found in Brito-Arroyo's car.

After their motions were denied, Brito-Arroyo and Brito-Maldonado entered guilty pleas, with Brito-Arroyo entering a conditional plea preserving his right to challenge on appeal a denied suppression motion [Brito-Arroyo Plea Agreement, Doc. 187-1]. At sentencing Brito-Arroyo was sentenced to a total of 252 months, or 240 months on Counts One, Two, and Three to run concurrent, and an additional

12 months on Count Four to run concurrent [Judgment and Commitment, Doc. 204].  Brito-Maldonado received a sentence of 228 months, or 216 months on Counts One and Four to run concurrent and an additional 12 months consecutive on Count Three [Doc. 227].  The Government recommended a two-level downward variance for Brito-Maldonado that was granted Id.

### Drug Quantity–District Court Attributed Drugs Found in Brito-Maldonado's Bedroom to Arroyo-Garcia.

The Government laid a foundation asserting that 6,514.60 grams of methamphetamine, nearly all found within the shed where Arroyo-Garcia was apprehended, was attributable to Arroyo-Garcia.  (ST - 9-24).  Arroyo-Garcia objected to the accuracy of that calculation, but conceded for guideline calculation purposes that at least 4800 grams were properly attributed to him given his being present where the contraband was found.  (ST–36-37). Arroyo-Garcia, however, objected to the 300 grams of methamphetamine found in Brito-Maldonado's bedroom being attributed to Arroyo-Garcia.  [See Doc. 251, Government's Exhibit One within, ST-10-11].    Arroyo-Garcia noted that he had no interest in the Zachary Way property, and that his role was limited to helping convert the methamphetamine within the shed (ST-37-39).  The District Court, however, found that the two bags within Brito-Maldonado's bedroom were "foreseeable and attributable to the Defendant as part of the overall conspiracy." (ST-39).  In so ruling, the District Court made no finding whatsoever as to whether this quantity

7

was foreseeable to Arroyo-Garcia in light of Arroyo-Garcia's scope of involvement within the conspiracy, and the activity he agreed to jointly undertake.

### **Gun Enhancement -- Co-Conspirator Possession Attributed**

The Government's arguments supporting the gun enhancement were all generalized and not specific to Arroyo-Garcia. It is undisputed that Arroyo-Garcia himself did not personally possess a firearm. In any case, the Government argued that the mere proximity of his co-defendants' firearms to the site of the charged offense and to methamphetamine and drug proceeds established that the possession was in furtherance of the conspiracy (ST-40-41). It argued that the gun possessions were foreseeable to Arroyo-Garcia on the basis that his co-conspirators would naturally have guns to protect the drugs and the proceeds. (ST-42). The gun possession was foreseeable to Arroyo-Garcia, the Government argued, considering the "frequent and overpowering connection between the use of firearms and narcotic traffic" (PSR, ¶ 36). It cited the large quantities of drugs and money involved as ipso facto rendering the possession foreseeable to Arroyo-Garcia (ST-42).

Arroyo-Garcia responded that he was merely a processor/converter of the methamphetamine (ST-42). He noted that no gun was at the actual arrest site (ST–43-44), and that Arroyo-Garcia thus did not have the burden of showing that a connection between the guns and the conspiracy was clearly improbable (ST-45).

8

[The probation officer had herself acknowledged that the guns were not present at the scene of the crime (PSR, ¶ 36)].  Arroyo-Garcia argued that it was improper to attribute the gun found in Brito-Maldonado's bedroom, because Arroyo-Garcia had no interest in the house; and that Brito-Arroyo's firearms were even less proper to attribute to Arroyo-Garcia, considering they were found far away from the Zachary Way premises (ST-46).  Arroyo-Garcia again noted his limited involvement and that the Government had failed to show he was anything but a processor.  Id.

The District Court found that the firearms were possessed in furtherance of the conspiracy, based on the close proximity of the co-defendants' firearms to the drug proceeds and to the methamphetamine itself, and that such was reasonably foreseeable to Arroyo-Garcia, without specifying in what manner (ST-52).  Also, Arroyo-Garcia had not shown that the possession of the firearms was clearly improbable (ST–51-52).  As with the drug calculation, the District Court made no finding as to how it was foreseeable to Arroyo-Garcia within the scope of Arroyo-Garcia's involvement within the conspiracy, and the activity he jointly agreed to undertake.

### Minor Role Request Denied

Arroyo-Garcia argued for a minor role, given there being no evidence he was anything beyond a converter of the methamphetamine (ST-53), nor any indication he had personally sold or transported the drugs, or exerted any

leadership role (ST–54-55). Arroyo-Garcia pointed out that he had no possessory or residential interest in the home (ST-54). Arroyo-Garcia distinguished his involvement between Brito-Arroyo, who effectively managed the property and had large amounts of contraband within his car and home when arrested, as well as what was found in Brito-Maldonado's bedroom (ST-55). The Government responded that Arroyo-Garcia had not shown what the "average" culpability was for each of the three defendants, and therefore Arroyo-Garcia did not deserve the adjustment (ST-56,57). The Government acknowledged having no information to indicate that Arroyo-Garcia was a leader within the conspiracy (ST-57).

The District Court denied the reduction, citing two points: Arroyo-Garcia was involved in the actual processing of the methamphetamine and had over $6,000.00 on his person when arrested, which "indicates he was one of the people who was profiting from the conspiracy." (ST–57-58). The District Court, however, as with its gun and drug findings, made no finding whether a minor role was appropriate when measured against the scope of Arroyo-Garcia's jointly-undertaken role within the conspiracy,

### District Court Assesses Three Criminal History Points on Dekalb County Revocation.

Arroyo-Garcia had noted in specific detail the basis against his getting the three-point enhancement for the Dekalb County revocation (See Sentencing Memorandum, Doc. 245 – p. 12-13, PSR, ¶ 46). At sentencing, Arroyo-Garcia

10

walked the District Court through the specific backdrop and his concerns in painstaking detail—without any fact-based objection whatsoever from the Government as to the apparent mistake in fact regarding his December 16, 2003 conviction in DeKalb County for VGCSA violation that entailed a three-year to do 90 -day sentence. (ST–59).

Arroyo-Garcia noted that the sentencing sheet itself provided that probation would become applicable only "if and when he [Arroyo-Garcia] was released by INS" (ST–60). Arroyo-Garcia had been placed in INS/ICE custody on December 17, 2003, just one day after his guilty plea (ST–61). Arroyo-Garcia noted that the sole predicate behind the violation of probation – and the subsequent issuance of the Tolling Order – was based on his failure to report to his probation officer. (See Exhs. 1 – 3 presented by Arroyo-Garcia at the hearing (Collectively Doc. 266, ST–60-62)).[2] Counsel noted that the Tolling Order was executed on January 29, 2004

---

[2]Arroyo-Garcia's Sentencing Hearing Exhibit 1 is the October 24, 2012 Revocation Order and the December 16, 2003 Sentencing Order from DeKalb County Superior Court indicating that probation would only take effect if Arroyo-Garcia was released from INS; Exhibit 2 is the Tolling Order and Warrant to Arrest (both erroneously issued in tandem on January 29, 2004); and Exhibit 3 is a standalone copy of the 2012 Probation Revocation Order. These exhibits were all admitted without objection. While Exhibit 1 reflects that Arroyo-Garcia was represented by counsel for his December 2003 guilty plea, there is no indication from the revocation order or otherwise that he was represented by counsel at the 2012 probation revocation hearing, which adjudication of course provides the basis for the three additional criminal history points added here.    [This is despite the probation officer's generic statement that Arroyo-Garcia was represented by counsel (PSR, 46).]

(ST–61) and that Arroyo-Garcia's sentence would have expired in December 2006, absent this erroneous issuance of the Tolling Order.[3]

Arroyo-Garcia noted that this evident mistake of fact added three points to his criminal history score and moved him from a Category 3 criminal history to a Category 4 (ST–63). Arroyo-Garcia argued that the Government's assertion that he should have called his probation officer upon being released in Mexico was frivolous (ST–64-65), not to mention that probation itself was conditioned on his being released from ICE custody and able to report. He noted that the Government had no factual objection whatsoever to his rendition of the above facts, which the Government acknowledged (ST–66-67).

Arroyo-Garcia argued alternatively that should the District Court feel constrained to accept the 3-point increase, that at the very least it should have adjusted Arroyo-Garcia's criminal history category downward one 1evel (ST-56, Sentencing Memorandum Doc. 245, pg. 13, FN 2).

The District Court denied these requests, citing that the Tolling Order issuance was irrelevant; that it was undoubtedly issued and a revocation entered (ST - 69-70), resulting in a conviction within the applicable time for consideration.

---

[3]The Probation Officer herself acknowledged that the probation was tolled after Arroyo-Garcia had been effectively removed from the country and thus not in a position to report. Exhibit 3 within Doc 266, the Revocation Order itself, reflects that the failure to report comprised the sole basis of the violation. (PSR, ¶ 46, Response).

The District Court sidestepped Arroyo-Garcia's objection that it would have been impossible for him to comply in reporting to his probation officer when Arroyo-Garcia was indisputably in ICE custody, nor did it address the alternative request about adjusting his criminal history category one level downward (ST – 70).

### Guideline Calculations and Pronouncement of Sentence

The District Court assessed a base guideline level of 38; a three -point enhancement for Arroyo-Garcia's conviction on Count Four; the two-point firearm enhancement yielding an adjusted guideline level of 43, or a net adjusted guideline level of 40 after acceptance of responsibility; yielding a guideline sentence of 360 months to life (ST-70-74).

Arroyo-Garcia requested a non-guideline sentence of 132 months (ST–75). He noted the unreliability of the methamphetamine guidelines, as referenced in his Sentencing Memorandum [Doc. 245, pp. 5-7], noting that several courts had deemed those guidelines unreliable and not empirically supported.  This was particularly the case when considering the ten to two-factor ratio between actual/crystal methamphetamine and a composite mixture containing methamphetamine.  Id.  Arroyo-Garcia requested accordingly a four-point downward variance (ST–76), based on these guidelines lacking a sound empirical basis.

Arroyo-Garcia again noted his limited involvement as merely a processor of the methamphetamine, while having no possessory interest in the Zachary Way premises (ST–76-77). He noted Brito-Arroyo's having $110,000.00 in cash on his person at his residence and two guns, on top of what found in Brito-Arroyo's car; Arroyo-Garcia mentioned Brito-Maldonado's having methamphetamine, considerable cash, and a weapon (ST–76-77) within Brito-Maldonado's bedroom. Arroyo-Garcia again noted that the Government had presented no evidence showing that he was anything beyond a mere processor (ST–78), or that he was personally trafficking or selling (ST–79). He noted the Government's downright misleading statements asserting that Arroyo-Garcia physically trafficked or transported drugs, and that he essentially managed the property (See Government Sentencing Memorandum [Doc. 246], (pp. 12; 15-16), without any particularized evidence whatsoever showing such. (ST-81).

Arroyo-Garcia gave perspective on his criminal history, noting that he had no violent or drug trafficking history, and that his history was already being taken into account in his Level IV category (ST–83, ST-84).

Arroyo-Garcia noted the sentences given of 252 months for Brito-Arroyo and 228 for Brito-Maldonado, the co-leaseholders of the Zachary Way property who actually had drugs, guns, and very large quantities of money found within their personal effects. Arroyo-Garcia argued he should get no more than two-

14

thirds time of the sentences his co-defendants received (ST–85-86).[4]    The Government argued that Arroyo-Garcia deserved a heavier sentence because of his criminal history and his twice returning from deportation, along with his resisting arrest.

**Pronouncement of Sentence.**    The District Court ruled exactly as the Government requested, and sentenced Arroyo-Garcia to a 264-month sentence. The District Court stated that the sentence was a reasonable one, citing boilerplate the 18 U.S.C. §3553(a) factors (ST–94-95), without giving any particulars.    The District Court declined to address what impact, if any, it gave upon Arroyo-Garcia's mitigating factors such as having no connection to the property.    It also failed to account for what was a just and reasonable sentence in light of Arroyo-Garcia's involvement in the conspiracy and what he jointly agreed to undertake.

The District Court indicated that a guideline sentence was intrinsically appropriate, but that it would nonetheless give a downward variance in light of the reduction it gave to one of his co-defendants, without specifying which co-defendant. (ST–95).  Notably, it did specify that Arroyo-Garcia's criminal history and attempted flight comprised only 12 months of the 264-month sentence (ST–95)—thus in effect equating Arroyo-Garcia's culpability to Brito-Arroyo's, who

---

[4] In rebuttal, the Government continued with its unsubstantiated assertion that Arroyo-Garcia was personally transporting and trafficking the methamphetamine (ST–89).

received a total of 252 months. Arroyo-Garcia objected to the sentencing and asked the District Court to what extent, if any, it took into account the requested downward variance on the methamphetamine guidelines in fashioning the sentence. The District Court declined to so specify (ST–95-96).

### STANDARD OF REVIEW

The Court of Appeals reviews the District Court's determination of facts as to the firearm enhancement on a clear error standard and reviews de-novo the application of the guidelines to those facts. United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

This Court reviews the District Court's factual findings regarding a role in the offense adjustment for clear error, United States v. House, 70 F.3d 87 (11th Cir. 1995). This Court reviews de novo, however, the application of the guidelines to the facts that this Court finds regarding the defendant's role in the offense. United States v. Delgado, 56 F.3d 1357 (11th Cir. 1995).

This Court reviews the District Court's factual findings regarding calculation of criminal history for clear error, and its application of the sentencing guidelines to those facts de novo. United States v. Kinard, 472 F.3d 1294, 1297 n. 3 (11th Cir. 2006).

This Court reviews the substantive reasonableness of a sentence for abuse of discretion, to see if the District Court committed a clear error in judgment in

16

determining the sentence.  United States v. Irey, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc). This review includes an analysis of whether, under the totality of the circumstances, "the statutory factors set forth in 18 U.S.C. §3553(a) support the sentence in question." United States v. Overstreet, 713 F.3d 627 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

Defendant's overriding argument is that this Court must vacate and remand the judgment, because the District Court failed to make any of the required findings as to the scope of Arroyo-Garcia's agreed-upon activity in the conspiracy. See U.S.S.G. § 1B1.3;  United States v. Presendieu, 880 F.3d 1228, 1245 (11th Cir. 2018).  These findings were a predicate not only in evaluating whether enhancements applied, but in determining the ultimate reasonableness of the sentence.

Through its abridged and incomplete analysis, the District Court erred in its decisions on the firearm enhancement and minor roles, in its failure to assess the scope of Arroyo-Garcia's involvement, and what he jointly agreed to undertake with his co-conspirators.  As for the firearm enhancement, the District Court made no particularistic findings showing that his co-conspirators possession was foreseeable to Arroyo-Garcia.  It also clearly erred in putting the burden on Arroyo-Garcia to show that it was clearly improbable that a firearm was connected

17

to the offense, since no firearm was found at the scene of the crime where Arroyo-Garcia was arrested.  United States v. Perez-Alonso, No. 15-14894 (11th Cir. 2017) (quoting United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).

More particularly, Arroyo-Garcia presented sufficient facts as to his criminal history indicating that those calculations were in error.  The District Court, however, declined to make any review of the underlying facts in violation of United States v. Roman, 989 F.2d 1117 (11th Cir. 1993), not to mention disregarding there was no evidence that Arroyo-Garcia was represented for his probation revocation.  While the standard is one of demonstrating that the subject conviction is presumptively void, the District Court must at the least review the documents and evidence, but declined to do that here.   When considering that, along with no evidence that Arroyo-Garcia was represented, the assigning of the three points was clear error and independently mandates reversal.

The ultimate sentence given was thus erroneous because of the misapplying of the guidelines and inflated calculations, as well as it being substantively unreasonable without reference to the guideline errors.  While Arroyo-Garcia did receive a lower-than -guideline sentence (nonetheless higher than either of his two-codefendants), the District Court failed to address or rule on Arroyo-Garcia's request for a downward variance based on the unreliability of the methamphetamine guidelines.   Further, the sentence was substantively

unreasonable in that Arroyo-Garcia got a higher sentence than either co-defendant, despite his repeated showing that he deserved a lesser sentence for not having any guns or contraband on his person, and having no connection with the house that adjoined where the crime occurred.  The unreasonable sentence was exemplified by the District Court's implicitly finding that Arroyo-Garcia was of equal culpability to Brito-Arroyo, a finding which cannot be sustained for starters since the count for maintaining a premises pled by Brito-Arroyo was dismissed as to Arroyo-Garcia, and they otherwise pled to the same counts.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    THE DISTRICT COURT ERRED IN GRANTING THE GOVERNMENT'S REQUEST FOR THE TWO POINT FIREARM ENHANCEMENT, WITHOUT MAKING ANY FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE, WHILE PLACING ON ARROYO-GARCIA THE BURDEN OF SHOWING CLEAR IMPROBABILITY**

As noted, the District Court made no findings specific to Arroyo-Garcia on this issue, aside from ruling that his co-conspirators' firearms possession was reasonably foreseeable to Arroyo-Garcia, and that Arroyo-Garcia had not shown such possession (by his co-conspirators) was clearly improbable (ST – 52).

**District Court Failed to Assess the Scope of Arroyo-Garcia's Agreed-Upon Activity in the Conspiracy.**  It is undisputed that Arroyo-Garcia had no

19

firearms on his person at any time, and no firearms were found in his immediate presence.  Therefore, any attribution of firearm enhancement to Arroyo-Garcia must be derived from the possession of his co-conspirators, which requires a particularized finding of Arroyo-Garcia's relevant conduct with the conspiracy under U.S.S.G.§ 1B1.3  (See United States v. Smith, 127 F.3d 1338 (11th Cir. 1997); United States v. Gallo, 195 F.3d 1278 (11th Cir 1999); Stallings, supra. 463 F.3d at 1220).

Here, as in Gallo, supra, Arroyo-Garcia did not possess the firearms at issue. Rather, they were possessed by his co-conspirators, but those firearms may be attributed to Arroyo-Garcia only if called for under U.S.S.G.  §1B1.3 analysis. This requires that the Government prove by a preponderance of the evidence that the firearm possession be reasonably foreseeable to the defendant.  Gallo, 195 F.3d 1278 at 1281-82, incorporating the requirements of U.S.S.G §1B1.3.

Specifically, U.S.S.G. § 1B1.3, cmt. n.3 provides that the Court must first determine the scope of the criminal activity the defendant agreed to jointly undertake, for the conduct of any co-conspirator to be attributed to the defendant. Only conduct of others in furtherance of the conspiracy that is reasonably foreseeable in connection with the criminal activity jointly undertaken by the defendant is relevant conduct.  Gallo, 1278 F.3d at 1281-82.    This comment, as with other guideline commentary, is binding on the District Court.    Stinson v.

20

United States, 508 U.S. 36 (1993). The Government need not only prove foreseeability in general terms as to acts committed by co-conspirators per Gallo, but that required foreseeability must be measured against the scope of the activity the defendant agreed to jointly undertake. United States v. Chisholm, 73 F.3d 304 (11th Cir. 1996); Presendieu, supra, 880 F.3d. at 1245; United States v. Montano-Garcia, No. 18-11773 (11th Cir. 2019). Knowledge alone does not amount to acquiescence in the acts of the criminal enterprise as a whole. United States v. Hunter, 323 F.3d 1314, 1320 (11th Cir. 2003).

Here, however the District Court failed to make any of these findings, much less consider the scope of Arroyo-Garcia's agreed-upon undertaking in the conspiracy. This was despite Arroyo-Garcia's expressing over and over that his role was confined to working in the shed processing the methamphetamine, exemplified by his having no connection to the adjoining house leased by his co-conspirators and Arroyo-Garcia having no guns or contraband found on his person. The core basis of the District Court's attributing the firearms to Arroyo-Garcia was their being found in proximity to contraband and drug proceeds (of his co-conspirators), without in the slightest sense considering the scope of activity Arroyo-Garcia agreed to jointly undertake. This alone requires vacating the Judgment and remanding for findings.

**District Court Improperly Ruled that Arroyo-Garcia Had Burden of Showing that Possession of the Firearms by his Co-conspirators Was Clearly Improbable.**  As noted, a core component of the District Court's decision was directly predicated on Arroyo-Garcia not meeting this burden.  However, Arroyo-Garcia had no such burden, considering that the Government did not meet its initial burden of showing that the firearm was present at the scene of the charged conduct, as Arroyo-Garcia repeatedly noted (ST 45-46).  See <u>Stallings</u>, <u>supra,</u> 463 F.3d at 1220.

Here, no firearms were possessed at the scene of the charged conduct.  The only remotely - colorable argument would be that the firearm found in Brito-Maldonado's bedroom (and next to a miniscule amount of methamphetamine compared to that found within the shed over fifty feet away where Arroyo was actually present), would be deemed the scene of the charged conduct.  But this would amount to a major stretch and fail as a common-sense proposition, considering that the shed where Arroyo-Garcia was apprehended was a separate enclosed structure from the residence, and considering that Arroyo-Garcia had no connection to the house itself.  See <u>United States v. Cooper</u>, 111 F.3d 845, 846-47

11th Cir. 1997) (weapons found at defendant's home did not trigger enhancement where the drugs themselves were found at a mini warehouse some distance away).[5]

Arroyo-Garcia's argument is only much better with respect to Brito-Arroyo's having guns within his Sandy Springs residence and automobile, again far removed from where Arroyo-Garcia was found in the shed. Simply put, the firearms should not be deemed present for purposes of Arroyo-Garcia's involvement in the conspiracy. The Government failed to rebut Arroyo-Garcia's factual proffers as to his narrowed scope in the conspiracy, and to establish that any firearms where present at the crime scene where Arroyo-Garcia was apprehended.

**Foreseeability Not Proven.** Even if this Court found that the firearms were present at the scene of the crime, the District Court still erred in assessing the enhancement because the Government failed to prove that the possession was foreseeable to Arroyo-Garcia. As noted above, the District Court relied on the possession being foreseeable to Arroyo-Garcia in rendering its decision. This determination of foreseeability, however, could only be made through making

---

[5] <u>Cooper's</u> impact on the instant case should not be minimized, despite its involving a conviction on a substantive charge, while Arroyo-Garcia pled guilty here to conspiracy as well, considering that no relevant conduct findings were made as to the scope of Arroyo-Garcia's involvement in the conspiracy as noted above. Additionally, while the warehouse in <u>Cooper</u> was miles away from the residence, the fact that Arroyo-Garcia had no connection whatsoever to the residence minimizes, if not altogether negates, any relevance of that distinction here.

findings as to the scope of the agreement that Arroyo-Garcia agreed to jointly undertake, which unquestionably did not occur. See <u>Presendieu</u>, <u>supra</u>, 880 F.3d at 1245, noting that a determination of foreseeability cannot be made unless and until the District Court makes *individualized* findings concerning the scope of criminal activity undertaken by a particular participant. The District Court failed to make any such findings here.

Specific to the issue at hand, and on top of the U.S.S.G. § 1B1.3(a)(1)(B) requirements noted above, there is abundant case law noting the need for making *individualized* findings proving that the firearm possession of co-conspirators was truly foreseeable to the defendant. Here, the Government argued "the frequent and overpowering connection between the use of firearms and narcotic traffic." However, our precedent makes clear that the Government must make a particularized showing of nexus between the firearm possession and the drug crime to sustain the enhancement. See e.g., <u>Stallings, supra,</u> 463 F.3d at 1221; <u>United States v. Walker,</u> No. 18-11404 (11th Cir. 2019); see also, <u>United States v. Block,</u> 705 F.3d 755, 764-65 (7th Cir 2013), noting that boilerplate assumptions about the drug trade going hand-in-hand with firearm ownership should be very cautiously applied when considering the firearm enhancement.

As the <u>Block</u> Court stated, "We have never held … that the mere risk involved in a drug manufacturing conspiracy establishes the reasonable

foreseeability of a concealed firearm under guideline 2D1.1(b)(1) absent other evidence." Id. at 764, (quoting United States v. Vold, 66 F.3d 915, 921 (7ᵗʰ Cir 1995)). Rather, the Block Court reasoned, the Government failed to show foreseeability where there was no evidence the defendant had seen drugs in the co-conspirators home where the firearm was possessed by a co-conspirator, and where allegations that the defendant himself possessed a firearm were not substantiated. Id.

Both the Gallo and Block Courts cited and considered Vold, supra, in crafting their required parameters of foreseeability. (See Gallo, 195 F.3d at 1278, 1284 FN 1; Block, 705 F.3d at 764).   In Vold, the Court rejected the claim of foreseeability where the Government presented no evidence that the co-conspirator had fired or brandished a weapon when with defendant. The Vold Court also noted that the idea that every drug manufacturing conspirator should receive the enhancement would essentially amount to a strict liability standard, vitiating the Court's obligation to sentence only on facts reasonably foreseeable to the Defendant. Id. at 921.   See also United States v. Ramirez, 783 F.3d 687 (7ᵗʰ Cir 2015), holding that the Court should determine the defendant's role within the conspiracy and the scope of his undertaking, when determining whether gun possession was reasonably foreseeable to the defendant.

In short, the Government failed to show just how the firearm possession of his co-conspirators was foreseeable to Arroyo-Garcia, much less establish any of the required relevant conduct findings generally.  Instead, the Government's arguments were generalities, and the District Court adopted such without the required analysis.  The District Court also erred in ascribing the burden of showing clear improbability to Arroyo-Garcia.   As such, this Court must at a minimum vacate the judgment and remand for the necessary and correct findings to be made.

## II.   THE DISTRICT COURT ERRED IN DENYING ARROYO-GARCIA A MINOR ROLE REDUCTION WITHOUT MAKING ANY FINDINGS AS TO THE SCOPE OF THE CONSPIRACY ACTIVITY ARROYO-GARCIA AGREED TO JOINTLY UNDERTAKE

Here again, the District Court's failure to consider the scope of Arroyo-Garcia's agreement in the conspiracy, and what he jointly agreed to undertake, mandates remand at the very minimum.

As set forth in United States v. Wenxia Man, 891 F.3d 1253, 1274 (11th Cir 2018), a District Court in determining the propriety of a role adjustment must consider all of the facts probative of the defendant's role in the relevant conduct and evaluate whether a reduction is appropriate under the totality of the facts and circumstances.  Also, U.S.S.G. § 3B1.2, cmt. n. 3(C) provides a non-exhaustive list of factors, such as the degree to which the defendant understood the scope and structure of the criminal activity; the degree to which he participated in planning or organizing; the degree in exercising decision-making authority; and the nature and

degree in which he stood to benefit. (Id. at 1274). Merely making this role reduction decision on one factor comprises error. Presendieu, supra, 880 F.3d at 1245 (11th Cir 2018).

Echoing prior arguments, Arroyo-Garcia reiterated that the Government had failed to show that he was anything but a processor, or that he had any interest in the premises themselves. (ST-52-53). He reiterated that contraband and guns (and over six figures of money with respect to Brito-Arroyo) were found on his co-defendants but not on Arroyo-Garcia (Id. at 53). The Government failed to address or rebut these arguments, merely generically asserting that Arroyo-Garcia had not shown the average level of participation. However, this argument fails because Arroyo-Garcia had—repeatedly—distinguished his involvement from that of his two co-defendants, based on their leasehold interest in the so-called stash house and the guns, cash and contraband found among their personal effects. The Government at no time rebutted Arroyo-Garcia's narrowed factual rendition of his involvement. Further the Government dismissed Count Three, recognizing that Arroyo-Garcia had no control over the premises, while the others pled guilty to it. This further distinguished Arroyo-Garcia's involvement, and underscored that he was less culpable than the average participant, and in fact either of his co-defendants.

27

Despite all this, the District Court ignored Arroyo-Garcia's persistent entreaties, instead considering just two generic factors: First, Arroyo-Garcia's being a processor of the methamphetamine; and two, his having "proceeds" which supposedly reflected his profiting from the enterprise. However, these findings not only failed to factor in Arroyo-Garcia's scope of involvement in the conspiracy, but they failed to impact the guideline factors under U.S.S.G. § 3B1.2 cmt. n(3)(C), supra. The fact that Arroyo-Garcia was found at the conversion lab and may have been a processor failed to consider the extent of his involvement in comparison with the others; also, his having $6,000.00+ on his person suggested he was profiting from the conspiracy, but hardly doing so at the expense of his two co-defendants, who had much greater sums found on them as noted.

While the District Court's considering of merely two factors may have been arguably sufficient, in that technically more than one factor was considered, (see Presendieu, 880 F.3d at 1250) this limited analysis substantially failed to address the scope of activity Arroyo-Garcia agreed to undertake, and hardly amounted to a consideration of "all of the facts probative of the defendant's role in the relevant conduct. " Wenxia Man, 891 F.3d at 1274. This ground thus likewise independently requires remand.

**III.   THE DISTRICT COURT ERRED IN CALCULATING A THREE-POINT ENHANCEMENT TO ARROYO-GARCIA'S CRIMINAL HISTORY BASED ON A PROBATION REVOCATION PREDICATED ON A TOLLING ORDER ERRONEOUSLY ISSUED WHEN ARROYO-GARCIA WAS IN CUSTODY FOR IMMINENT DEPORTATION**

The Government did not dispute that the tolling order predicating a revocation eight years later was erroneous, since Arroyo-Garcia was in custody and could not report, and in fact that the probation did not even apply unless he was released form INS/ICE custody.  The Government nevertheless argued that it did not have any evidence "to question the propriety of the order" (ST-67), while making the rather questionable argument that Arroyo-Garcia could have reported via phone to his probation officer following deportation to Mexico.

The District Court's ruling assessing the three points likewise ignored the circumstances—thus bumping up Arroyo-Garcia's criminal history category up one level—in merely asserting that the tolling order was in fact issued and a revocation granted.  This may have somehow been permissible <u>if</u> the District Court had actually reviewed and considered the string of exhibits that Arroyo-Garcia tendered in establishing his point.   While admitting the documents, there is no indication that the District Court did so, or actually considered the lengthy recitals Arroyo placed on the record.

**Legal Standards.**  As set forth in <u>Roman</u>, <u>supra</u>, 989 F.2d at 1120, the sentencing court must review evidence supplied to challenge the prior conviction

(in this case a probation revocation) before taking that prior conviction into account.    Arguably, had the District Court at least reviewed the records, its decision may have been sustainable.  But it totally failed to conduct the most basic review, and this likewise requires remand, since Arroyo-Garcia was materially bumped into a higher criminal history category through the District Court's counting the revocation.  See also United States v. Spell, 44 F.3d 937 (11th Cir 1995), which imposes an obligation on the District Courts to examine and evaluate court documents produced that are relevant to whether a predicate Career Offender conviction exists.   Finally, the District's Court's refusal to even consider granting a downward departure to criminal history category III reflects the failure of the District Court to exercise the most basic discretion that it was required to do here.

**Impact of Not Having Counsel.**    There is a presumption that a record of conviction not indicating representation of counsel amounts to a denial of counsel, and the conviction thereby void.  See Burgett v. Texas, 389 U.S. 109, 114 (1967); Strachan v. Army Clemency and Parole Board, 151 F.3d 1308 (10th Cir. 1998).   A probation revocation, of course, can trigger points to a defendant's criminal history as would any other conviction.  See e.g., United States v. Mondo, 852 F. 3d 1343, 1350 (11th Cir. 2017).    Whether it be a probation revocation or more "typical" conviction, the Roman analysis applies, i.e., the Defendant can defeat receiving the subject criminal history points, upon showing that the revocation/conviction was

presumptively void. See Mondo, id. at 1350; See also United States v. Cooper, 203 F.3d 1279, 1287 (11th Cir. 2000), recognizing along with Roman that the sentencing court must review the prior conviction before taking it into account for criminal history calculations.

Here, Exhibits One and Three (within Doc. 266) clearly reference that Arroyo-Garcia had counsel on his underlying 2003 conviction, but there is no indication that he had counsel for the 2012 revocation. There is no indication that he waived counsel, unlike the Defendant in United States v. Jackson, 57 F.3d 1012 (11th Cir. 1995). As such, this amounts to yet another reason for vacating the imposing of the three points, or at the very least remanding for a full determination whether Arroyo-Garcia had counsel at the revocation proceeding. Again, the presumption is he was denied access to counsel where the record does not so indicate here.[6] Unlike the defendant in United States v. Anaya-Plascencia, No. 18-11878 (11th Cir. 2018), the sole basis of the 3-point enhancement here would be the revocation, not the underlying conviction since the conviction itself would be outside the applicable 15 year period. U.S.S.G. §4A1.2(e).[7]

---

[6] While counsel had historically not been absolutely required for defendants in Georgia facing probation revocation proceedings, a 2005 law (O.C.G.A. §17-12-23(a)(2)) requires attorney representation for indigent defendants facing revocation hearings in Superior Court. Thus, Arroyo-Garcia was entitled to counsel under Georgia law for this 2012 proceeding.

[7] Arroyo-Garcia acknowledges that he did not object on the specific ground of lack of counsel at sentencing. That said, this issue is reviewable by this Court on a

**Remand Required at Absolute Minimum Because Court did Not Consider the Documents.**    To be sure, it is Arroyo-Garcia's position that the District Court's counting that revocation indisputably predicated on an erroneously-issued tolling order (with no indication that Arroyo-Garcia was represented at the revocation hearing) is clear error that requires vacating of those three criminal history points.    Alternatively, at the very least, the District Court had the obligation to at least review and consider the documents.  This Court must therefore at a very minimum remand with instructions to actually evaluate and consider the documents produced and make necessary findings as to counsel and otherwise, so this Court can ultimately determine whether the conviction meets the presumptively void standard.

---

plain error standard, considering the seriousness a court must take any deprivation of counsel. See Strachan, supra, 151 F.3d at 1311; United States v. Olano, 507 U.S. 725 (1993).   However, even if this Court declined to address the lack of counsel issue, it is clear that the revocation was mistakenly entered under any conceivable interpretation and should be regarded as presumptively void.  That all said, at the very least remand is required because the District Court failed to evaluate Arroyo-Garcia's factual record presented as required under both Roman and Cooper, supra, beyond making a conclusory determination that the tolling order was irrelevant and the points assessable simply on the basis that the revocation was in fact entered.

**IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING ARROYO-GARCIA IN FAILING TO CONSIDER THE SCOPE OF ARROYO-GARCIA'S INVOLVEMENT IN THE CONSPIRACY, AND THE PROPORTIONALITY OF HIS SENTENCE TO HIS TWO CO-DEFENDANTS**

The ultimate sentence must be vacated for many reasons. First, the District Court's decision on the firearm enhancement and minor role mandate remanding because the District Court failed to consider the scope of Arroyo-Garcia's agreed-upon activity in the conspiracy. The finding sustaining the three-point criminal history enhancement likewise requires remanding at the very least, as the District Court failed to effectively review the documentation submitted, and considering questions as to whether Arroyo-Garcia was actually represented.

In striking the firearm and criminal history enhancements and factoring in two points for a minor role, Arroyo-Garcia's final adjusted offense level would have been 36, yielding a sentencing range of 235 to 293 months on criminal history category 3 (Sentencing Memorandum, Doc. 245 – p. 14). This of course is substantially less than the 360 months to life sentence calculated by the District Court in finding an adjusted offense level of 40 against a criminal history category IV.

The sentencing decision is further flawed considering that the District Court likewise failed to specify the reasons for the sentence beyond a boilerplate recitation of the 18 U.S.C. § 3553(a) statutory factors. It is apparent the Court

33

failed to really consider the multiple arguments raised by Arroyo-Garcia minimizing his involvement compared to his co-conspirators, much less apply the mandates of the relevant conduct guideline. See e.g., United States v. Brown, 526 F.3d 691, 713 (11th Cir. 2008) (evidence required that Court actually considered defendant's arguments at sentencing); See also United States v. Miranda, 505 F.3d 785, 792-96 (7th Cir. 2007) (no confidence in District Court analysis where sentencing judge gives little to no attention to defendant's principal arguments).

Finally, the District Court, acknowledging the below-guideline sentence given for two of Arroyo-Garcia's co-defendants, failed to sufficiently state the basis for Arroyo-Garcia's downward reduction, beyond stating that it had given a variance to one of the co-defendants and was doing the same here (actually both of the co-defendants received lower-than-guideline sentences). However, when pressed for specifics and as to what extent the District Court was departing downward due to the challenged methamphetamine guidelines, the District Court merely said "I've said what I've said about the sentence, Mr. Jeffrey," without more (ST-96). A remand is necessarily required for this independently, as the District Court needs to give a fuller basis for the downward variance so that this Court can effectively review it.

While Arroyo-Garcia did receive a non-guideline sentence, to be sure the errors complained of are not harmless. Arroyo-Garcia deserves to be sentenced

based on the **correct** application of the guidelines, which did not occur here for the reasons noted.

Further, in any event and leaving aside the above, Arroyo-Garcia's sentence was substantively unreasonable considering that he received the highest sentence of the three (with only 12 months attributed to his having a higher criminal history than the others and his attempted flight from the scene) despite all indications that his co-defendants were vastly more culpable than Arroyo-Garcia. His co-defendants were leaseholders of the subject property and had guns and contraband on them and much larger portions of cash than did Arroyo-Garcia. It was Brito-Arroyo, not Arroyo-Garcia, who had a security app on his cell phone to avoid detection. It was both of his co-defendants who maintained the premises where a minor was present (with both pleading guilty to Count 3 that was dismissed against Arroyo-Garcia), and where Arroyo-Garcia was only peripherally on the scene.

Arroyo-Garcia justly asked for a sentence of no more than two-thirds the amount of his sentence given to his co-defendants, which would amount to a sentence of 168 months as applied against Brito-Arroyo's sentence. The ultimate sentence of 264 months was thus substantively unreasonable. Based on the foregoing, the sentence cannot stand as calculated, and requires remand so that all factors can be properly considered.

## <u>CONCLUSION</u>

**WHEREFORE**, Arroyo-Garcia respectfully asks that the Court vacate his sentence and remand for the District Court's consideration of the required factors, with a direction that the sentence should not exceed at the very most 168 months.

Respectfully submitted, this 26th day of May 2021.

<u>*s/ Mark Jeffrey*</u>
MARK JEFFREY
GA Bar No. 390048
Attorney for Defendant/Appellant

2470 Windy Hill Road
Suite 300
Marietta GA  30067
770- 933-5377-P
770-956-2919-F
email: mark@jeffrey-law.com

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.  Type-Volume

    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because this document contains less than 13,000 words.

2.  Typeface and Type-Style

    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in proportionately spaced typeface using Word in Times New Roman 14.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, including opposing counsel.

> Garrett L. Bradford
> Office of the U.S. Attorney
> 600 Richard Russell Federal Building
> 75 Ted Turner Drive
> Atlanta, GA  30303

> William G. Traynor
> Office of the U.S. Attorney
> 600 Richard Russell Federal Building
> 75 Ted Turner Drive
> Atlanta, GA  30303

This 26th day of May 2021.

> *s/ Mark Jeffrey*
> MARK JEFFREY
> GA Bar No. 390048
> Attorney for Defendant

2470 Windy Hill Road
Suite 300
Marietta GA  30067
770- 933-5377-P
770-956-2919-F
email: mark@jeffrey-law.com